# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

**ROY SHERMAN,**

      **Plaintiff,**

**v.**                                                    **Case No: 5:15-cv-36-Oc-34PRL**

**CHRIS BLAIR, FRANCO PORCELLI**
**and PAXTON SAPP**

      **Defendants.**

_____

## REPORT AND RECOMMENDATION[1]

    The Plaintiff, Roy Sherman, alleges that during a traffic stop involving his son, where Plaintiff attempted to communicate with Marion County Sheriff Deputies Franco Porcelli and Paxton Sapp, the deputies subjected him to a false arrest and the use of excessive force—thus violating the First and Fourth Amendments to United States Constitution and state law.  He seeks relief against the deputies individually, and, based on the deputies' conduct, he asserts claims against Marion County Sheriff Chris Blair, in his official capacity.[2]

    In total, Plaintiff alleges eleven counts in his Complaint.  He asserts, under 42 U.S.C. § 1983, that Porcelli made an unlawful arrest (Count I) and used excessive force (Count III); that Sapp made an unlawful arrest (Count II) and failed to intervene in Porcelli's use of excessive force (Count IV); and that Sheriff Blair, in his official capacity, failed to train or supervise his deputies and created or allowed a policy, custom, or procedure that caused the deputies' alleged

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

[2] By suing Sheriff Chris Blair in his official capacity, Plaintiff is suing the Marion County Sheriff's Office.  *See infra* footnote 8.

misconduct to occur (Count V).   Under state law, he asserts that Porcelli used excessive force (Count VI) and falsely arrested him (Count IX); that Sapp used excessive force (Count VII) and made a false arrest (Count X); and that Sheriff Blair, again in his official capacity, is vicariously liable for the excessive force used against Plaintiff (Count VIII) and for his false arrest (Count XI).

Each of the Defendants now seek the dismissal of several of Plaintiff's claims.   As discussed below, I recommend that Sheriff Blair's motion be granted for Count V (Plaintiff's claims under § 1983 against the Sheriff) and Count VIII (his state law vicarious liability claim for excessive force), and that his First Amendment claims be dismissed in their entirety, as Plaintiff has failed to state claims under each of these theories of liability.   The motions are due to be denied for the remaining Counts, as Plaintiff has either alleged a sufficient factual basis for them or the Defendants have not challenged them.[3]

## I.    BACKGROUND[4]

According to Plaintiff's Complaint, on May 19, 2014, his autistic son was pulled over for speeding by Deputy Porcelli.  At some point during the stop, the son used a cell phone to call his father, who is the Plaintiff here.   Then, Plaintiff's son signed the ticket that Porcelli issued him and Porcelli concluded the traffic stop.  (Doc. 11, ¶¶ 17–19, 25).

While Porcelli was still at the scene of the traffic stop, Plaintiff pulled up and parked his car on the opposite side of the road.  As he sat in his car, Plaintiff attempted to explain his son's autistic condition to Porcelli, but Porcelli repeatedly interrupted him.   Porcelli stated that Plaintiff was interfering with an investigation and repeatedly asked him to leave.  (Doc. 11, ¶

---

[3] Notably, Defendant Sapp does not address Count IV (Plaintiff's claim the he failed to intervene in Porcelli's use of excessive force) and Defendant Sheriff Blair does not address Count XI (his claim that the Sheriff is liable for the false arrest effected by his deputies).

[4] The background "facts" are taken from Plaintiff's amended complaint (the "Complaint") (Doc. 11) and are taken as true for purposes of these motions to dismiss.

23).

Towards the end of a nineteen second exchange between him and Porcelli, Porcelli announced that Plaintiff was under arrest.  Porcelli ordered Plaintiff out of his car several times and then attempted to pull him out of the car.  At that time, Deputy Sapp arrived at the scene. (Doc. 11, ¶ 35).  Sapp opened Plaintiff's passenger door and pushed him out of the car as Porcelli pulled on Plaintiff's left arm.

Once the deputies forced him out of the car, Porcelli tased Plaintiff—even though he did not provoke, resist, or threaten the two deputies.  (Doc. 11, ¶¶ 37–38).  The tasing brought him to the ground.  As Plaintiff lay on the ground, Sapp repeatedly yelled "stop resisting."  The deputies then rolled him onto his stomach and handcuffed him.[5]  While he lay handcuffed on his stomach, Porcelli tased Plaintiff four more times as Sapp yelled "stop resisting."[6]  At no point did Sapp attempt to stop Porcelli from tasing Plaintiff.  (Doc. 11, ¶ 42).  The deputies then placed Plaintiff in a patrol car.

Plaintiff also contends that Sheriff Blair, after his review of the incident, stated that the deputies' conduct did not violate any Sheriff's Office policy.  (Doc. 11, ¶¶ 47–50).  Plaintiff now seeks relief against the deputies and against Sheriff Blair.  Each Defendant has now moved to dismiss various Counts of the Complaint, and Plaintiff, with the assistance of counsel, has responded to the motions.[7]

## II.   LEGAL STANDARD

The bare minimum a plaintiff must set forth in his complaint is found in Fed. R. Civ. P. 8. Under Rule 8, "[a] pleading that states a claim for relief must contain . . . a short and plain

---

[5] Plaintiff states that he does not know which deputy—or whether both deputies—handcuffed him.  (Doc. 11, ¶ 40).

[6] According to Plaintiff, Porcelli used a "drive stun" technique.  (Doc. 11, ¶ 41).

[7] Plaintiff's counsel, which served him from the start of the case, withdrew a few months after they filed the responses, and Plaintiff has not, to date, retained further counsel.  (Doc. 39).

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The

United States Supreme Court has explained, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), that while particularity is not required under Fed. R.

Civ. P. 8, as it is under Fed. R. Civ. P. 9, "[a] pleading that offers 'labels and conclusions' or 'a

formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 555).  Instead, "[t]o survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).

A claim is plausible on its face where "the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678.  Plausibility means "more than a sheer possibility that a defendant has

acted unlawfully."  *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement

to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).  In short,

to survive a motion to dismiss a plaintiff must allege something more "than an unadorned, the-

defendant-unlawfully-harmed-me accusation."  *Id.* (citing *Twombly*, 550 U.S. at 555).

The Eleventh Circuit utilizes a two-pronged approach in its application of the holdings in

*Iqbal* and *Twombly*.  First, the court will "eliminate any allegations in the complaint that are

merely legal conclusions."  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir.

2010).  Then, "where there are well-pleaded factual allegations," the court will "'assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief.'"  *Id.*

(quoting *Iqbal*, 556 U.S. at 679).

In applying this two-step approach to determine the complaint's sufficiency under Rule 8

(and in turn the plausibility of the claims), the Eleventh Circuit limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Further, the Court can infer "'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 682) (brackets omitted).

## III.   DISCUSSION

The Court will first address the arguments raised by Deputies Porcelli and Sapp.  The Court will then address the arguments raised by Sheriff Blair.  Finally, as all three Defendants address Plaintiff's apparent First Amendment claims and his state law negligent infliction of battery and excessive force claims, these arguments will be addressed collectively.

### A.  Deputies Porcelli and Sapp[8]

#### 1.  *Constitutional Claims*

Any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."  42 U.S.C. § 1983.  A plaintiff may recover for a violation of his constitutional rights pursuant to § 1983 under a theory of individual liability or governmental liability.  It is well established that government agents are "shielded from liability for civil

---

[8] It appears that Plaintiff brings all his claims against Deputies Porcelli and Sapp in their individual capacities as opposed to their official capacities.  In any event, an official capacity suit is essentially an action against the entity for which the officer is an agent.  *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991).  Indeed, it is well established that a suit against a governmental official in his or her official capacity is the same as a suit against the entity that employs the officer.  *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986).  Here, to the extent that Plaintiff is suing the deputies in their official capacity, those claims are superfluous, because Sheriff Blair is named in his official capacity.

damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Here, Defendants argue that no constitutional violations occurred.  Indeed, when considering a plaintiff's claims, "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, established a constitutional violation." *Hope*, 536 U.S. at 736.  Further, to establish personal liability against a government agent for a constitutional wrong, the facts alleged by Plaintiff must contain sufficient allegations to show that the individual *personally participated* in the alleged constitutional violation. *See, e.g.*, *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003).

a)   Defendant Porcelli—Counts I and III

Plaintiff asserts two claims against Deputy Porcelli under § 1983.  In Count I, Plaintiff claims Porcelli falsely arrested him and, in Count III, he claims Porcelli used excessive force. Porcelli argues that Plaintiff has failed to state claims for these constitutional violations under the Fourth Amendment.  (Doc. 23, p. 2.)  I disagree.

Under § 1983, Plaintiff asserts a claim for false arrest in Count I, a claim that generally requires a showing of "(1) the unlawful detention and deprivation of liberty of a person; (2) against that person's will; (3) without legal authority or 'color of authority'; and (4) which is unreasonable and unwarranted under the circumstances." *Mbano v. Kriseman*, No. 8:14-CV-1923-T-30TBM, 2014 WL 5782802, at *4 (M.D. Fla. Nov. 6, 2014).  In other words, a "warrantless arrest without probable cause violates the Fourth Amendment and is actionable under 42 U.S.C. § 1983." *Ainsworth v. Norris*, 469 F. App'x 775, 776 (11th Cir. 2012).

Here, Plaintiff asserts that Porcelli, under the color of law, falsely arrested him without

probable cause as Plaintiff "had not committed any crime and there was no legitimate basis to arrest" him.    (Doc. 11, ¶ 32).   Instead, Plaintiff contends that he was arrested while merely attempting to have a lawful conversation with Porcelli about his autistic son.   Therefore, "reading the allegations in the light most favorable" to Plaintiff, he has alleged enough to state a claim for false arrest.  *See Mbano*, 2014 WL 5782802 at *4 (denying a 12(b)(6) motion to dismiss a claim for false arrest were the plaintiff alleged that we was "detained and arrested . . . against his will and without probable cause").

Second, under § 1983, Plaintiff asserts a claim for excessive force in Count III.   Under the Fourth Amendment,[9] the "freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest."   *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002).  To determine whether excessive force was used, the court considers whether the actions in question "are 'objectively reasonable' in light of the facts and circumstances."   *Garrett v. Athens–Clarke County*, 378 F.3d 1274, 1279 (11th Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989) (further internal quotation omitted).

In the instant case, Plaintiff has asserted enough to conclude that the force Porcelli used was unreasonable.  Plaintiff asserts that, without probable cause, Porcelli dragged him from his car, tased him once, handcuffed him while he lay on the ground, and then tased him four more times as he lay on his stomach, handcuffed and helpless.  Plaintiff did not threaten the deputies, or even attempt to resist or flee.  *See Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (finding excessive force where an officer punched a handcuffed suspect who was not resisting);

---

[9] Because Plaintiff alleges that the excessive force used against him occurred during his arrest, and before he was placed in the patrol car, the Court analyzes his claims under the Fourth Amendment. Indeed, "Fourteenth Amendment analysis does not begin until 'after the incidents of arrest are completed, after the plaintiff has been released from the arresting officer's custody, and after the plaintiff has been in detention awaiting trial for a significant period of time.'"   *Polanco v. City of Marco Island*, No. 2:10-CV-605-FTM-29, 2011 WL 2911002, at *3 (M.D. Fla. July 19, 2011) (quoting *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir.1998)).

*Lee*, 284 F.3d at 1198 (finding excessive force where an officer slammed the plaintiff's head into a car when the plaintiff was handcuffed, helpless, and posed neither a threat to the officer nor a flight risk).  Under these facts, Plaintiff has stated a plausible claim for relief; thus, Defendant's motion is due to be denied.  *Saunders v. Duke*, 766 F.3d 1262, 1267 (11th Cir. 2014) (finding that the "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force" under the Fourth Amendment).

b)   <u>Defendant Sapp—Count II</u>

In Count II, Plaintiff asserts a claim against Sapp for false arrest, under the Fourth Amendment, arising from his encounter with Porcelli and Sapp.  Besides showing a lack of probable cause, to establish liability under § 1983 for a false arrest, a plaintiff must show that the officer "'was personally involved in the acts that resulted in the constitutional deprivation.'" *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 737 (11th Cir. 2010) (quoting *Zatler*, 802 F.2d at 401).

Sapp argues, in his motion to dismiss, that he arrived after Porcelli made the decision to arrest Plaintiff.  Thus, Sapp concludes, Plaintiff fails to allege a claim for false arrest against him.

Plaintiff's Complaint, however, alleges sufficient facts to show that Sapp *actively* and *personally* participated in the arrest.  (Doc. 11, ¶¶ 35–42).  According to Plaintiff, Sapp pushed him out the car, may have handcuffed him, stated several times he should "stop resisting" (when in fact he wasn't resisting), and Sapp had ample opportunity to intervene in the arrest.  *Cf. Brown*, 608 F. 3d at 737 (dismissing a false arrest claim where the defendant did not "actively" and "personally" participate in the arrest and had no chance to intervene in the arrest).  Thus, Defendant's motion is due to be denied.

## 2. State law claims

Plaintiff asserts state law claims for battery and excessive force (Count VI) and for false arrest (Count IX) against Porcelli. He similarly asserts claims for battery and excessive force (Count VII) and for false arrest (Count X) against Sapp.

Both deputies argue that they have no notice of whether Counts VI, VII, IX, and X are being brought under state or federal law. It is clear, though, from the title of these Counts, that they are asserted under state law, as Plaintiff refers to them as state tort claims and references Florida's waiver of sovereign immunity statute: they are titled, *e.g.*, "Florida State Tort Claim[s] Pursuant to § 768.28." Thus, Porcelli and Sapp have fair notice of the claims against them and the grounds upon which the claims rest. *See Criswell v. Intellirisk Mgmt. Corp.*, 286 F. App'x 660, 664 (11th Cir. 2008) ("A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests.") (quoting *Sams v. United Food & Commercial Workers Int'l Union, AFL-CIO, CLC*, 866 F.2d 1380, 1384 (11th Cir. 1989)). Their motions to dismiss are thus due to be denied on this argument.

Defendant Sapp (like his contention as to the Fourth Amendment claim against him) argues that Plaintiff has failed to allege sufficient facts to state a claim for false arrest against him (Count X) because Sapp "arrived after" Porcelli made the decision to arrest Plaintiff. As noted above, however, Plaintiff has plead sufficient facts to show that Sapp personally participated in the alleged false arrest.

As previously stated in the Fourth Amendment context, Deputy Sapp overlooks the Plaintiff's contentions that Sapp, without any probable cause, effected his arrest along with Porcelli. Indeed, Plaintiff states that Sapp arrived at the scene and simply began pushing him out

of his vehicle to effect a baseless arrest.  Further, Plaintiff asserts that Sapp handcuffed him (or assisted in handcuffing him or at least watched him get handcuffed), stood-by as he was tased to the ground, told him to stop resisting as he lay helpless (again, when he was not resisting), and then stood by as he lay helpless and was repeatedly tased again four times—but Sapp did not intervene and instead repeatedly told Plaintiff to stop resisting.  Assuming, as I must, these facts to be true, Plaintiff has made sufficient allegations, at this stage of the proceedings, to state a plausible claim in Count X for false arrest.

Further, while Fla. Stat. § 768.28 may shield an officer from personal liability in tort for his own negligence, it does not shield an officer for acts committed in bad faith, with malice, or with a wanton and willful disregard for human rights: "No officer . . . shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, *unless* such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."  Fla. Stat. § 768.28(9)(a) (emphasis added).

Here, although the Complaint alleges that Sapp acted in the scope of his employment when he arrested Plaintiff, it also alleges that Sapp acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. (Doc. 11, ¶ 138).  The Court notes that, under § 768.28(9)(a), "conduct committed in bad faith has been characterized as conduct acted out with actual malice."  *Kastritis v. City of Daytona Beach Shores*, 835 F. Supp. 2d 1200, 1225 (M.D. Fla. 2011.)  And, conduct that meets the "wanton and willful" standard must be more than gross negligence or mere intentional conduct. *Id.*

### B.  Sheriff Blair

#### 1.  Constitutional Claim

While Plaintiff's Fourth Amendment claims against the deputies are adequately plead, he has failed to state a claim, in Count V and under § 1983, against Sheriff Blair in his official capacity.  Under *Monell*,[10] a government entity is subject to § 1983 liability "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Monell*, 436 U.S. at 694. Under the *Monell* doctrine, however, "municipalities cannot be held liable for employees under *respondeat superior*."  *Mercado v. City of Orlando*, 407 F.3d 1152, 1161 (11th Cir. 2005).

If a constitutional violation is established, then the courts must consider "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *accord Patrick v. Floyd Medical Center*, 201 F.3d 1313, 1315 (11th Cir. 2000).  Specifically, in order to prevail under this claim, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the [municipality's] policy or custom caused the violation."[11]  *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

The second requirement, namely, that a custom, policy, or procedure exists, "prevents the imposition of liability based upon an isolated incident."  *Id.*  Indeed, courts have recognized that: "Where a plaintiff claims that a municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."  *Bd. of*

---

[10] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

[11] A policy or custom is a persistent and wide-spread practice.  *Depew v. City of St. Marys, Georgia*, 787 F.2d 1496, 1499 (11th Cir. 1986).

*County Comm'r v. Brown*, 520 U.S. 397, 405 (1997).

To establish that a government policy is the cause of, or moving force behind, the constitutional deprivation, a plaintiff must do more than recite conclusory statements that a policy exists or a particular practice was tolerated—factual matter must be allege to support such assertions. *See, e.g., Barr v. Gee,* 437 Fed. App'x 865, 874–75 (11th Cir. 2011).  Indeed, in *Barr*, the Eleventh Circuit found that the plaintiff's allegations that the county had a "custom of tolerating violations of his and his child's constitutional rights" were insufficient where such allegations were supported by "no factual allegations to support a plausible inference that such a custom existed." *Id.*  As the plaintiff unsuccessfully attempted to do in *Barr*, here the Plaintiff appears to rely on the alleged misconduct of the deputies to impute liability on the Sheriff, which he cannot do.  In fact, reliance on the conduct of the deputies, and the Sheriff's alleged failure to punish them afterwards, is insufficient, in and of itself, to impute liability on the Sheriff.  *See id.*

Certainly, simply alleging the elements necessary to state a claim against a governmental entity, without alleging facts to support those elements, is insufficient for the purpose of surviving a motion to dismiss.  *See, e.g.*, *Gray v. City of Roswell*, 486 Fed. App'x 798, 800–01 (11th Cir. 2012) (holding that while a municipality may be liable under Section 1983 when official policy or custom causes a constitutional violation, a plaintiff cannot survive a motion to dismiss where she "does not recite any facts or policies that would support a claim against the City," but instead makes "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements") (quotation omitted).

Here, although the facts set forth with regard to the incident establish plausible Fourth Amendment violations by the deputies, the Plaintiff's facts related to a purported custom or policy sufficient to constitute a deliberate indifference to Plaintiff's constitutional rights, and that

the custom or policy caused the violations in question, are inadequate.  Plaintiff generally alleges that the Sheriff's Office had a custom, policy, pattern, or practice of allowing numerous problems including, but not limited to: arresting individuals without probable cause, using excessive force, failing to intervene in an unlawful arrest, failing to intervene in an unlawful use of force, and failing to train and supervise its officers.  (Doc. 11, ¶¶ 94–97).  But these broad allegations will not do.

The only facts asserted by Plaintiff, at best, tend to show that Sheriff Blair may have, *post hoc*, approved the deputies' conduct, by determining that the conduct was within the Sheriff's Office's guidelines.[12]  Otherwise, as stated, Plaintiff merely asserts conclusory allegations without alleging facts to support the existence of the purported customs or policies—the only evidence of a custom or policy alleged is Plaintiff's single and isolated incident.  *See, e.g.*, *Hall v. Smith*, 170 Fed. App'x 105, 108 (11th Cir. 2006) (reasoning that because the Plaintiff "alleged no factual support for his conclusory statement that the City had a policy or custom of grossly inadequate supervision and training of its employees, the district court did not err in dismissing" the plaintiff's claims against the City).  Thus, Sheriff Blair's motion to dismiss Count V is due to be granted.

Further, to the extent Plaintiff also asserts a failure to train or supervise claim (*see, e.g.*, Doc. 11, ¶ 99), such a claim also fails on these allegations.  "[I]nadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate

---

[12] Plaintiff has also failed to properly allege a Fourth Amendment ratification claim.  As the Eleventh Circuit has recently made clear, a plaintiff may not base a ratification claim, against an authorized policymaker, on an subordinate's single incident of misconduct, where the policymaker was unable to "'approve [the] subordinate's decision and the basis for it'" *before* the subordinate's decision to perform the misconduct became final.  *Salvato v. Miley*, No. 5.12-cv-00635, Doc. 248 at 18 (11th Cir. May 6, 2015) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).  Here, Sheriff Blair had no opportunity to approve the deputies' decisions and the basis for them before the deputies chose to perform the alleged misconduct.

indifference . . . ."  *See City of Canton*, 489 U.S. at 388.  "To establish 'deliberate indifference' or a 'deliberate or conscious choice,' a plaintiff must present some evidence that the [government] knew of a need to train and/or supervise in a particular area and the [government] made a deliberate choice not to take any action."  *Gold v. City of Miami*, 151 F.3d 1346, 1350–51 (11th Cir. 1998).  "Further, the Eleventh Circuit requires 'proof that the [governmental entity] was aware of a prior incident in which constitutional rights were similarly violated.'"  *Lang v. City of Largo*, 2006 WL 889990, at *2 (M.D. Fla. Apr. 6, 2006) (quoting and citing *Church v. Huntsville*, 30 F.3d 1332, 1342–46 (11th Cir. 1994)).  Notably, it is not sufficient to merely allege that a particular officer may be unsatisfactorily trained or that an incident could have been avoided if an officer had better training.  *City of Canton*, 489 U.S. at 390–91.

Here, Plaintiff has alleged nothing (other than conclusory assertions) to suggest that the Sheriff was "deliberately indifferent" to his rights or the rights of others.  Indeed, Plaintiff alleges that the Sheriff simply failed to train and supervise its deputies in lawful detention, arrest procedures, and the appropriate use of force (Doc. 11, ¶¶ 94–95, 99), but he alleges no factual basis—other than his incident—to support this theory of liability.  Facts must be alleged to support this theory of liability.  *See Hall*, 170 Fed. App'x at 108 ("Because Hall alleged no factual support for his conclusory statement that the City had a policy or custom of grossly inadequate supervision and training of its employees, the district court did not err in dismissing Hall's claims against the City."); *cf. Rivas v. Figueroa,* 2012 WL 1378161 (S.D. Fla. Apr. 20, 2012) (finding that the plaintiff had sufficiently alleged facts of a custom, policy, or practice to overcome the defendants motion to dismiss where the plaintiff alleged, with detail, numerous instances of police officers using excessive force and receiving no disciplinary action).

Plaintiff has presented no factual matter, as he is required to do, that the government

knew of a need to train and deliberately chose not to take action; nor has Plaintiff provided evidence that the Sheriff was aware of a prior incident.  Accordingly, Plaintiff's governmental liability claim, as alleged, is due to be dismissed.

### 2.  State Law Claim

Plaintiff brings Count VIII against Sheriff Blair "for the battery and excessive force used against Plaintiff" under a theory of vicarious liability.  (Doc. 11, ¶ 121–124).  To the extent Plaintiff seeks to hold the Sheriff liable for acts committed in bad faith by the deputies, he cannot do so under state law.  Under Fla. Stat. § 768.28(9)(a), "[t]he state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent . . . committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."

Here, Plaintiff explicitly alleges that both Porcelli and Sapp used excessive force "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."  (Doc. 11, ¶¶ 110, 118).  Thus, Plaintiff's assertion in Count VIII that the Sheriff is liable in his official capacity for the "intentional misconduct" of the deputies fails.[13] *Hoelper v. Coats*, No. 8:10-CV-01324, 2010 WL 4292310, at *4 (M.D. Fla. Oct. 27, 2010) ("In the State of Florida, Plaintiff['s] false arrest/imprisonment claim against Defendant . . . under respondeat superior theory would be barred because of the Plaintiff's allegation of the Defendant deputies' actions with malice, and the agency is not liable under state law for the malicious acts of its employees.") (citation omitted); *Boggess v. Sch. Bd. of Sarasota Cty.*, No. 8:06CV2245-T-27EAJ, 2008 WL 564641, at *5 (M.D. Fla. Feb. 29, 2008) (finding that "because Plaintiff has alleged that Defendants placed false statements in the public record with "malice or reckless

---

[13] To the extent Plaintiff brings this Count against Sheriff Blair for the vicarious liability of the deputies' negligent conduct, the Count also fails.  *See infra* Section C.2.

disregard" for their truth or falsity, Plaintiff's claim against the [Defendant] in his official capacity is barred by sovereign immunity under Section 768.28(9)(a)").

### C. Defendants' Common Arguments

#### 1. First Amendment Claims

In addition to the Fourth Amendment claims, the Defendants note that Plaintiff appears to bring claims for First Amendment retaliation, though the Complaint lacks any separate count that alleges such a claim.  In any event, to the extent Plaintiff does seek to allege First Amendment claims, the Defendants' arguments are sufficiently similar to address them collectively and are well-received.

Under the First Amendment, "[t]o state a retaliation claim, the commonly accepted formulation requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).  To establish a causal connection, Plaintiff must allege that his constitutional speech was the "motivating factor behind the defendant's actions." *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008).  And a retaliatory motive may be inferred from the circumstances. *Lawson v. City of Miami Beach*, 908 F. Supp. 2d 1285, 1291 (S.D. Fla. 2012).

Here, in Plaintiff's facts section of the Complaint, he explains how Porcelli repeatedly interrupted his request to explain that his son was autistic and how Porcelli unlawfully placed him "'under arrest' for this request."  (Doc. 11, pp. 4–6).  Then, in several of his other Counts, Plaintiff makes the conclusory assertion that one or more of the Defendants violated his First Amendment "right to freedom of speech and expression."  (Doc. 11, ¶¶ 54, 62, 70, 100).

As a threshold matter, Federal Rule of Civil Procedure 8 requires a plaintiff to set forth a short and plain statement of each claim, as opposed to inferring claims on a Plaintiff's behalf, as Plaintiff would have the Court do here.  (*See, e.g.*, Doc. 31, pp. 7–9).  Thus, Plaintiff's pleading as to a First Amendment claim is inadequate.

To the substance of his claim, Plaintiff fails to allege, in the Complaint, that his request to express his son's autistic condition to Porcelli was constitutionally protected speech.  Further, he also fails to allege that the unlawful arrest and force used against him affected his speech.  Thus, although Plaintiff suggests that he was arrested while he tried to speak with Porcelli, Plaintiff has failed to allege that he had a constitutionally protected right to speak with the deputies and that his speech, if it is so protected, motivated Porcelli's actions.  *See, e.g.*, *Abella v. Simon*, 482 F. App'x 522, 523 (11th Cir. 2012) (vacating a trial court's denial of a motion to dismiss a First Amendment retaliation claim where the complaint in question failed to allege that protected conduct motivated the defendant's actions).

### 2.   *Negligent Infliction of Battery and Excessive Force Claims*

Lastly, all three Defendants point out that to the extent Plaintiff attempts to assert a state law claim for negligent infliction of battery and excessive force (*see, e.g*, Count VI as to Porcelli, Count VII as to Sapp, and Count VIII at to Sheriff Blair), the claims fail: Florida does not recognize a claim for the negligent infliction of battery and excessive force.  *See Secondo v. Campbell*, 327 F. App'x 126, 131 (11th Cir. 2009) ("Florida courts have conclusively established that a cause of action for the negligent use of excessive force is an oxymoron."); *City of Miami v. Sanders*, 672 So. 2d 46, 47–48 (Fla. Dist. Ct. App. 1996) (noting that "a suit for a police officer's use of excessive force necessarily involves the intentional tort of battery" and that a "cause of action for battery requires the showing of intentional affirmative conduct and cannot be premised

upon an omission or failure to act" with due care).  Thus, to the extent Plaintiff makes any claims for negligent infliction of excessive force and battery, the motions are granted.

## IV.  RECOMMENDATION

For the reasons stated above, and upon due consideration, it is respectfully RECOMMENDED:

(1) As to the individual Deputies Porcelli and Sapp:

    a. Porcelli and Sapp's motions to dismiss (Docs. 23 and 24) be DENIED as to the constitutional claims in Counts I (false arrest as to Porcelli), II (false arrest as to Sapp), and III (excessive force as to Porcelli);[14]  and as to the state law claims asserted against them in Counts VI (excessive force as to Porcelli), VII (excessive force as to Sapp), IX (false arrest as to Porcelli), and X (false arrest as to Sapp); and

    b. GRANTED to the extent Plaintiff seeks claims against them in their official capacities, seeks claims against them under the First Amendment, and seeks relief for the "negligent infliction of excessive force and battery."

(2) Sheriff Blair's motion to dismiss (Doc. 21) be GRANTED in all respects: the constitutional claim against him in Count V (for failing to train and allowing or creating a custom, policy, or practice that permitted the deputies' misconduct), the state law claim in Count VIII (vicarious liability for the deputies' use of excessive force), any claim Plaintiff seeks to bring under the First Amendment, and for the purported state law claims of "negligent infliction of excessive force and battery."[15]

---

[14] I note again that Sapp does not challenge Plaintiff's alleged Fourth Amendment claim for Sapp's purported failure to intervene in Porcelli's use of excessive force (Count IV) in his motion to dismiss.
[15] I note again that Sheriff Blair does not challenge Plaintiff's claims against him for false arrest

- 18 -

**DONE** and **RECOMMENDED** in Ocala, Florida on December 18, 2015.


PHILIP R. LAMMENS
United States Magistrate Judge


Copies furnished to:

Counsel of Record
Unrepresented Parties

---

(Count XI) in his motion to dismiss.